**SO ORDERED.**

**SIGNED this 26 day of March, 2008.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for on-line; not designated for print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In Re: | |
| **LILLIAN ELLETHA MORRIS,** | **CASE NO. 05-18787** |
| | **CHAPTER 7** |
| **DEBTOR.** | |
| **J. MICHAEL MORRIS, Trustee,** | |
| **PLAINTIFF,** | |
| **v.** | **ADV. NO. 07-5058** |
| **LILLIAN ELLETHA MORRIS,** | |
| **DEFENDANT.** | |

**MEMORANDUM OPINION AND ORDER DENYING**
**TRUSTEE'S COMPLAINT FOR REVOCATION OF DISCHARGE AND**
**ENTERING MONETARY JUDGMENT AGAINST DEBTOR**

The matter before the Court is the Chapter 7 Trustee's Complaint for Turnover and Revocation of Discharge pursuant to 11 U.S.C. §§ 727(d)(3).[1] The plaintiff, Chapter 7 Trustee J. Michael Morris (hereafter "Trustee"), appears in person and by J. Michael Morris of Klenda, Mitchell Austerman & Zuercher, LLC. The defendant, Debtor Lillian Morris (hereafter "Debtor"), appears by Sean C. McEnulty of the McEnulty Law Firm, P.A. There are no other appearances. The Court has jurisdiction,[2] and the parties have so stipulated.

In the Pretrial Order, Trustee contends that Debtor's discharge should be revoked pursuant to §§ 727(d)(2) and (d)(3) for failure to turnover to the Trustee the estate's interest in 2005 tax refunds. The Trustee also prays for a judgment against Debtor for the estate's share of the refunds and related amounts. Trial was held on September 11, 2007. As reflected in the following Findings of Fact, the Court found Debtor's testimony credible. The Court took the matter under advisement. Having considered the exhibits, the testimony, and the arguments of counsel, the Court is now ready to rule. For the following reasons, the Court denies the complaint for revocation of discharge and enters judgment against Debtor for $5,990.82, plus interest.

---

[1] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(J). There is no objection to venue or jurisdiction over the parties.

**I. FINDINGS OF FACT.**

Trustee's evidence consisted of Debtor's testimony and written documents, including a transcript of Debtor's § 341 meeting and copies of her tax returns. Debtor's evidence was also presented through her testimony. Debtor was the only witness who testified at trial.

Debtor filed for relief under Chapter 7 on October 14, 2005. She used the services of a bankruptcy preparer but did not consult an attorney. Her schedules list no real property; personal property of $73,855, which includes a mobile home valued at $50,000, a vehicle valued at $4,320, and a $15,000 child support claim; secured claims of $57,773; unsecured claims of $25,824.50; monthly net income of $1,161.63; and monthly expenses of $1,524. Debtor appeared pro se at the 341 meeting of creditors on November 9, 2005. At the hearing the Debtor presented and the Trustee reviewed Debtor's 2004 tax returns. The 2004 federal return shows a refund of $1152 because of overpayment through withholding taxes. The only exemption claimed was for Debtor.

At the 341 meeting, the Trustee advised Debtor that he would need copies of her 2005 tax returns to be filed after the beginning of the year. He stated, "If you have a refund coming, do not cash or spend that until you find out whether we'll make a claim." The Trustee also delivered to Debtor at the § 341 hearing a document entitled "Notice Concerning your 2005 Tax Returns and Refunds." It stated in part:

> REMEMBER: A portion of your **2005 federal and state tax refunds** is property of your bankruptcy estate.
> When you file your **2005 federal and state tax returns**, you must provide full copies of those returns to your attorney (or to the trustee if you are not represented by an attorney) at the same time you file them. In the event you are entitled to a refund, you **must not cash your refund checks**. Rather, you should contact your attorney (or the trustee if you are not represented by an attorney)

3

> and await further instruction. If your refunds are direct deposited
> to a bank account, you must segregate the refunds until you receive
> further instructions.

Debtor acknowledges receipt of the written notice. She timely provided the Trustee with copies of her 2005 federal and state returns. Debtor received her discharge on January 31, 2006.

Debtor's 2005 tax returns, prepared with the assistance of a preparer, were filed in February, 2006. Debtor's 2005 federal return claimed, in addition to Debtor, four dependents, Debtor's son, Debtor's son's girlfriend, and two grandchildren. Debtor's total income was $17,252. After the application of the standard deduction and the personal deductions, no taxes were owed, although $1,854 had been withheld. The return also showed that Debtor was entitled to an earned income credit of $3,788 (based upon the two grandchildren) and additional child tax credit of $713. The total of these three amounts ($6,355) was designated on line 43 of the federal tax return as "payment" by the Debtor, even though two of the three categories were not in fact "payments." Line 44 of the return showed "the amount you overpaid" was $6,355, although again, two of the three categories of money that made up that amount were not money paid by the Debtor. Line 45 of the return read $6,355 is the "amount of line 44 you want refunded to you," even though $4,501 of the amount was not really a refund. Rather, it was a payment from the government intended to provide a certain amount of money to poor households with children. [3]

The return specified payment by deposit to Debtor's checking account. The federal refund was credited to her checking account in late March 2006, and Debtor used the funds for

---

[3] *See* Jennifer E. Spreng, When "Welfare" Becomes "Work Support": Exempting Earned Income Tax Credit Payments in Consumer Bankruptcy, 78 Am. Bankr. L. J. 279 (2004).

4

living expenses. The Kansas return showed no taxes due and a refund of $1,264, comprised of $480 in withheld taxes, $568 earned income credit, and $216 food sales tax refund. The refund was received about two weeks after the return was filed. Debtor used the state refund for living expenses.

Debtor provided a copy of the federal return to the Trustee. On March 3, 2006, the Trustee moved to reopen the case and gave notice of assets. The Trustee, by letter to the Debtor dated March 3, 2006, acknowledged receipt of the 2005 federal return and stated that the estate was entitled to 287/365th of the federal payment in the amount of $4,996.94. He requested remittance "as soon as the refund has been received by the debtor." The Trustee also stated he did not receive a copy of the 2005 state return and requested a copy. Debtor provided a copy of her state return. The Trustee by letter dated March 8, 2006, requested remittance from the state refund of "$993.88 as soon as the remittance has been received by the debtor."

Debtor was shocked by the amounts requested by the Trustee. She had understood the Trustee would get a part of her refund, meaning her overpayment by wage deductions. When she filed her tax returns, Debtor thought that the Trustee would have no claim to the earned income credit and the child tax credits, both of which in her view "belonged" to her grandchildren. Debtor would not have sought the refunds if she had known they would have to be turned over to the Trustee. Debtor did not understand her obligation to the Trustee.

On May 19, 2006, Trustee filed a motion for turnover of $5,990.82, the estate's share of the 2005 tax refunds. The motion did not allege that Debtor had present possession or control of the refunds or seek a judgment for the value of the refunds. The motion was noticed, with objection deadline. Debtor does not question receipt of the notice and a copy of the motion.

5

Debtor did not respond to the motion, and a default order of turnover of $5,990.82 within 10 days was entered on June 9, 2006 (hereafter "Turnover Order").

The Trustee advised Debtor of the Turnover Order by letter dated November 2, 2006. Debtor was confused by the order and did not intend not to follow it. In the letter, the Trustee stated that if payment was not received by November 12, 2006, he would proceed to file an adversary for turnover and revocation of discharge and would request interest, costs, and "a minimum of $500.00 in attorney fees." Debtor responded by sending to the Trustee a copy of the Trustee's letter on which she had typed the following:

> Please proceed with a revocation of discharge, as I don't have any money to feed myself and my dependants. I can't pay you any minimum of attorney fees, as I barely can pay my electric and water bill. I am sorry that I can't pay you money. Please do not beat me down any further that I already am. Your words are freightening and upsetting. Don,t spend any more time and just go ahead with your revoke.

Debtor attempted to call the Trustee three or four times because she was confused. The Trustee was not available. One time she talked with someone in his office about the amounts claimed, but did not understand what she was told.

Trustee filed the adversary Complaint on January 31, 2007. Counsel for Debtor entered his appearance and filed an answer on February 28, 2007. It was not until she retained counsel that Debtor understood that the estate has in interest in all moneys paid as a refund, including those attributable due to the earned income credit and child tax credit.

6

## II. Analysis and Conclusions of Law.

### A. Revocation of Discharge.

"The purpose of the Bankruptcy Code is to provide the honest, but unfortunate, debtor a fresh start."[4] "Congress described § 727's discharge provisions as 'the heart of the fresh start provisions of the bankruptcy law.'"[5] The availability of revocation of discharge allows a debtor to receive a discharge early in the case while protecting the estate and creditors if one of the enumerate grounds for revocation arises.[6] The bankruptcy court must strictly construe the provisions on revocation of discharge and revoke a discharge only for reasons clearly stated in the Code.[7] The trustee has the burden of proof to establish his revocation of discharge claim by a preponderance of the evidence.[8]

### B. The Trustee's Complaint was Timely Filed.

The time limits for seeking revocation of discharge under §§ 727(d)(2) and (d)(3) are stated in § 727(e), as follows:

> (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge–

---

[4] *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1300 (10th Cir. 1996).

[5] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3rd Cir. 1993) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 384(1977)).

[6] *See* 6 *Collier on Bankruptcy* ¶ 727.16[2] (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2007).

[7] *Holder v. Bennett (In re Bennett)*, 126 B.R. 869, 873 (Bankr. N.D. Tex. 1991); *see Kansas State Bank and Trust Co. v. Vickers (In re Vickers)*, 577 F.2d 683, 686-87 (10th Cir. 1978) (stating: "One of the primary purposes of the Bankruptcy Act is the rehabilitation of an honest debtor by discharging his debts to afford him a fresh start in his economic life. Exceptions to this general policy should be strictly construed against an objecting creditor and in favor of the debtor's right of discharge.").

[8] *Morris v. Wright (In re Wright)*, 371 B.R. 472, 479 (Bankr. D. Kan. 2007).

7

> (1) under subsection (d)(1) of this section within one year after
> such discharge is granted; or
>
> (2) under subsection (d)(2) or (d)(3) of this section before the later
> of--
>
>> (A) one year after the granting of such discharge; and
>>
>> (B) the date the case is closed.

In this case, the order of discharge was filed on January 31, 2006, and the case was closed on the same date. The case was reopened by order filed on March 27, 2006. The Complaint to revoke discharge was filed on January 31, 2007. Debtor contends that the Complaint was filed one day late, urging that "one year after the granting of such discharge" ended on January 30, 2007. For the following reasons, the Court finds that the Complaint was timely.

First, the Trustee suggests that the complaint was timely filed under § 727(e)(2)(B) because it was filed after the case was reopened. This Court rejects that argument. Courts holding a claim to be timely if filed while a case is reopened do so on the basis that a case is not really closed if there are concealed assets or the conduct of the debtor tolls the running of the time to seek revocation.[9] Many courts, however, reject this view and construe § 727(e) as a statute of repose, not a statute of limitations.[10] A statute of repose establishes a time limit during which a defendant's wrongful act must be the basis for a suit or be forever barred. The limit may not be tolled based upon the defendant's conduct or otherwise. This Court finds this to be the better view. The subsection establishes a firm cut off date after which a discharge is final. To

---

[9] *E.g.*, *Caughey v. Succa (In re Succa)*, 125 B.R. 168 (Bankr. W.D. Tex. 1991).

[10] *E.g.*, *Hadlock v. Dolliver (In re Dolliver)*, 255 B.R. 251 (Bankr. D. Me. 2000). *See* 6 *Collier on Bankruptcy* ¶¶ 727.16[1] and 727.16[2].

8

allow the reopening of a case to extend the time would indefinitely and unpredictably extend the period to challenge a discharge and there would be no "repose" of the possibility of revocation.[11]

Next, the Trustee urges that the Complaint was timely under § 727(e)(2)(A) because the one year time period commenced on the day after the filing of the order of discharge. The Court agrees with this position. Neither the parties' nor the Court's own research have located any directly applicable authorities addressing whether for purposes of § 727(e)(2)(A) the one year time limit starts on the date of the entry of the order of discharge (January 31, 2006), or the date following the entry of the order.[12]

The Trustee cites Rule 9006[13] regarding computation of time for purposes of the bankruptcy rules and the Federal Rules of Civil Procedure. "Whether and to what extent . . . [Code] time periods are to be measured by the mechanics of Rule 9006(a) has developed into a matter of some controversy."[14] Rather than weighing in on this difficult question, the Court construes the statutory language. Under § 727(e)(2)(A), the complaint must be filed "before . . .

---

[11] *See Int'l State Bank v. Fresques (In re Fresquez)*, 167 B.R. 973 (Bankr. D.N.M.1994) (holding that the one year period for bringing a revocation suit begins on the date the case was originally closed); *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889 (Bankr. W.D. Tenn. 2005) (reopening of case to administer undisclosed assets did not reinstate or toll time for bringing revocation complaint).

[12] In a recent unpublished opinion, the Tenth Circuit BAP affirmed a revocation of discharge under § 727(d)(2) where the complaint was filed one year after the grant of discharge. Although the timeliness of the action was not addressed in the BAP opinion, the court affirmed the bankruptcy court, which had found the action timely. *Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, No. NM-07-054 (10th Cir. BAP, Oct. 2, 2007).

[13] Fed. Rule Bankr. P. 9006 (providing in part when "computing any period of time prescribed or allowed by these rules . . . or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included").

[14] 10 *Collier on Bankruptcy* ¶ 9006.04.

9

one year after the granting of discharge."  "Before" is defined as "earlier in time."[15]  "After" is defined as "later in time; afterward."[16]  According to the statute, the cut off starts "after" the granting of the discharge, which means the day following the granting of discharge.  The period of one year therefore runs for one year after that date, or through the anniversary date of the filing.  In this case the Complaint was filed on the one year anniversary date.

Further, the Court agrees with the Trustee's argument that the periods under §§ 727(e)(1) and (e)(2) should be similarly construed.  As a matter or policy, this makes sense and is supported by the legislative history cited by the Trustee.[17]  Under § 727(e)(1), the complaint must be filed "within one year after such discharge."  By use of the word after, the statute clearly states that the one year period does not commence until the day after the filing of the order.  To hold that the time to file under § 727(d)(1), governed by § 727(e)(1), expired on January 31 but the time to file under §§ 727(d)(2) or (d)(3), governed by § 727(e)(2), expired on January 30, 2006 would be a strained construction.  It would be inconsistent with Rule 9006 and the generally applicable construction of time limits.  It would set a trap for those wishing to object to discharge and create a needless disparity between the time limits for claims governed by §§ 727(e)(1) and (e)(2).

The Court therefore holds that the time limit for filing a complaint to revoke discharge under §§ 727(d)(2) or (d)(3), which is governed by § 727(e)(2)(A), commences on the day after

_____

[15] American Heritage Dictionary of the English Language (4th ed. 2066).

[16] *Id.*

[17] Sen. Rpt. 95-989, 95th Cong., 2d Sess., 99 (1978). *See* 6 *Collier on Bankruptcy* ¶ 727.16[2] (making no distinction between the time limit under §§ 727(e)(1) and (e)(2)).

10

the date of filing of the order of discharge. The Complaint in this case was timely filed.

### C.  Revocation of Discharge Pursuant to § 727(d)(2) is Denied.

Section 727(d)(2) provides as follows regarding revocation of discharge:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>
> ***
>
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

The Trustee contends that Debtor's discharge should be revoked because after receiving her discharge, she received tax refunds in which the estate has an interest[18] and has failed to deliver or surrender the funds in response to the request of the Trustee and the Turnover Order entered by the Court.  Debtor contends her discharge should not be revoked because her failure to deliver the estate's share of the refunds was not knowing and fraudulent.

In order to revoke a discharge under this section, the Trustee must establish the Debtor acquired property of the estate and knowingly and fraudulently failed to report or deliver the property to the Trustee.  In this case, Debtor acknowledges that the estate has an interest in the tax refunds.  It is uncontroverted that the Debtor reported the tax refunds to the Trustee.  The controversy focuses upon whether she acted knowingly and fraudulently when failing to deliver

---

[18] It is settled in the Tenth Circuit that the estate has an interest in tax refunds attributable to earned income tax credits, pro-rated to the date the bankruptcy petition was filed.  The tax code provides that the credits are to be treated as tax refunds, and interests which were contingent of the date of filing are included in the estate. *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193 (10th Cir. 2000); *In re Adkins*, 2004 WL 2334716 (Bankr. D. Kan. 2004) (following *In re Montgomery*).

11

the refunds to the Trustee.  "The term 'knowingly and fraudulently' requires that the debtor be guilty of such acts as would sustain a civil action for fraud or deceit.  The debtor's actions must have been taken with the knowing intent to defraud the trustee, or be so reckless as to justify a finding that he acted fraudulently."[19]

The Court is not convinced of Debtor's fraudulent intent.  Debtor was shocked at the amount requested by the Trustee.  She very promptly provided the Trustee with all of the information he requested regarding the refunds.  Debtor credibly testified that in her view the earned income tax credit and the child tax refund "belonged" to her grandchildren.  It is clear to the Court that she did not view these moneys as refunds.  All of the written communications to her talked about refunds.  These communications did not define refunds to include the earned income tax credits, the child tax credit, or the food sales tax refund.  Although Debtor's understanding about the refunds was misguided, it was not fraudulent.

Debtor attempted to contact the Trustee three or four times.  Her efforts to talk to the Trustee for clarification were unsuccessful, although she did not give her name or leave a phone number on at least some occasions.  Although, in reality, Debtor's expectation to talk to the Trustee was unrealistic, given his case load, there is no evidence that Debtor was aware she was being unrealistic when responding to the Trustee's request for turnover.  Further, while Debtor understood she was to pay the Trustee a portion of the actual tax she had paid and was later refunded to her, her failure to so does not rise to the level of a fraudulent behavior because most people would not pay anything to the Trustee until there was agreement as to the correct amount.

---

[19] *Stewart v. Black (In re Black)*, 19 B.R. 468, 470 (Bankr. M.D. Tenn. 1982).

Notice by the Trustee to the Debtor of the estate's interest in the refunds, coupled with Debtor's failure to turnover the refunds, is not sufficient to establish fraud. This case is similar to *In re Wright*,[20] recently decided by Chief Judge Nugent, where debtor's turn over of half rather than all of his 2004 tax refund was based upon his belief that an agreement with his ex-wife that they would equally share the refund, controlled what the trustee was entitled to receive. As in this case, the Debtor had been informed of his obligation to turnover the refund by the trustee at the meeting of creditors and was advised of his obligation by letter. Despite the turnover order, debtor did not pay the full amount to the trustee. The court declined to revoke discharge under § 727(d)(2). The court found that while debtor's believe that his agreement with his ex-wife controlled the trustee's right to the refund "was misguided and ill-advised," the court was not convinced that debtor had acted with fraudulent intent.[21]

Absence of fraudulent intent was also found in *In re Everetts*,[22] where debtor distributed a $20,000 inheritance received postpetition. The court stated:

> The trustee also asks the Court to revoke the debtor's discharge pursuant to 11 U.S.C. § 727(d)(2). Although the debtor admits that she distributed estate property after the commencement of the case, we find that her conduct was not sufficiently or knowingly fraudulent to warrant that action. She reported the bequest on her amended schedules as required, and we find her actions to have been induced as the result of an elderly, ailing mother's reliance on bad advice from trusted sources who did know what they were doing, and who acted willfully and knowingly in obtaining property from the debtor which was not hers to give. Accordingly,

---

[20] *In re Wright*, 371 B.R. at 472.

[21] *Id.*, 371 B.R. at 481.

[22] *Gefreh v. Everetts (In re Everetts)*, 71 B.R. 110 (Bankr. D. Colo. 1987).

13

and admitting that we find this to be a close and difficult call, the
trustee's complaint seeking revocation of the discharge is denied.[23]

Likewise, Debtor's conduct was not sufficiently fraudulent or knowing to warrant revocation of

discharge.

For the foregoing reasons, the Trustee's complaint to revoke Debtor's discharge under §

727(d)(2) is denied.

### D. Revocation of Discharge Pursuant to § 727(d)(3) is Denied.

Subsection 727(d)(3) provides as follows regarding revocation of discharge:

> (d) On request of the trustee, a creditor, or the United States
> trustee, and after notice and a hearing, the court shall revoke a
> discharge granted under subsection (a) of this section if–
>
> ***
>
> (3) the debtor committed an act specified in subsection (a)(6) of
> this section;

Subsection 727(a)(6) provides for denial of discharge if "the debtor has refused, in the case - (A)

to obey any lawful order of the court, other than an order to respond to a material question or to

testify." The Trustee contends that Debtor's discharge should be revoked because she failed to

turnover her federal and state refunds as ordered by the Court in the Turnover Order, filed on

June 9, 2006.

In order to grant the Trustee's Complaint for revocation of discharge under § 727(d)(3)

the Court must find that the June 9, 2006 order was a "lawful order." The authority on what is a

lawful order is very sparse. One commentator states, without citation to cases or legislative

---

[23] *Id.*, 71 B.R. at 112.

14

history, that "[a]n order is lawful if it is authorized in the words of, or by implication from, the statute."[24]

The Court has serious concern about the lawfulness of the June 9, 2006 order as a basis to revoke discharge.  That order was issued in response to the Trustee's motion under § 542(a), which provides in relevant part that "an entity . . . in possession, custody, or control during the case, of property [of the estate] shall deliver to the trustee, and account for, such property or the value of such property."  The section establishes alternative remedies, turnover of the property or accounting for its value.  "For an order for turnover to be appropriate, it is necessary that a trustee demonstrate, not only that the debtor received or had possession of estate property, but also that the debtor was in possession of the property, or its value, at the time the turnover motion was filed."[25]  This requirement dates from at least the 1948 decision of the Supreme Court in *Maggio v. Zeitz*,[26] where the court vacated orders of commitment for contempt for failure to comply with turnover orders.  At that time there was no statutory basis for turnover, but the bankruptcy courts had fashioned a summary turnover procedure to "retrieve concealed and diverted assets or secreted books of account."[27]  The Court held that "[t]he nature and derivation of the remedy make clear that is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant

---

[24] 6 *Collier on Bankruptcy* ¶ 727.09[1].

[25] *Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 699-700 (Bankr. D. Colo. 2005).

[26] *Maggio v. Zeitz*, 333 U.S. 56 (1948).

[27] *Id.*, 333 U.S. at 63.

15

at the time of the proceeding."[28]  It reasoned, "Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however reprehensible, warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow."[29]  Although a bankruptcy court's authority and procedure for turnover has now been codified in § 542, the requirement that the turnover defendant have the property sought or its proceeds at the time of the complaint continues to be valid.[30]  If the defendant cannot turnover the property or the proceeds of the property because they are no longer in his possession, custody or control, § 542 gives the alternative remedy of a judgment for the value of the property.

        In this case, the Trustee's motion for turnover did not allege that Debtor had possession, custody, or control of the tax refunds when the motion was filed and did not seek the alternative remedy of a judgment for the value of the property.  The evidence establishes that on June 9, 2006 she was not in possession of the refunds, which had been spent.  In similar circumstances, the Colorado Bankruptcy Court "discounted the effect of its earlier Turnover Order in reaching its decision" in a revocation of discharge proceeding.[31]  It declined to revoke discharge based

---

[28] *Id.*, 333 U.S. at 63-64.

[29] *Id.*, 333 U.S. at 64.

[30] *In re Muniz*, 320 B.R. at 700; *Redfield v. Peat, Marwick, Mitchell and Co.(In re Robertson)*, 105 B.R. 440, 455-456 (Bankr. N. D. Ill. 1989) (collecting cases); *Boyer v. Davis (In re U.S.A. Diversified Products, Inc.)*, 193 B.R. 868, 874-77 (Bankr. N.D. Ind. 1995).

[31] *In re Muniz*, 320 B.R. at 700.

16

upon the debtor's noncompliance with an order of turnover where the debtor was not in possession of the property at the time the motion for turnover was filed.[32]

This Court likewise discounts the turnover order as a basis for revocation of discharge. Since Debtor was not in possession of the tax refunds when the motion for turnover was filed, she had a valid defense to the motion. Once entered, the order, although flawed, become enforceable, and the Court knows of no theory under which it can be collaterally attacked in this proceeding.[33] Nevertheless, the Court finds that to revoke discharge based upon non compliance with an order which the Debtor could not obey when it was entered and could not have complied with at any time since its entry, makes no sense. In compliance with the policy that the conditions for revocation of discharge be strictly construed to preserve the debtor's discharge, the Court construes the adjective "lawful" to include the requirement that the Debtor could have performed in accordance with the order when it was entered. Otherwise, trustees would have the ability to obtain turnover orders which create duties impossible of performance so that denial or revocation of discharge can follow. For this reason, the Court declines to revoke the Debtor's discharge under § 727(d)(3).

Further, the Court construes the word "refused" to include the requirement that the failure to obey the lawful order was willful and intentional and finds Debtor's failure to obey the turnover order was not willful and intentional for purposes of § 727(a)(6). "Since the enactment

_____

[32] *Id.*

[33] For example, in contempt proceedings "obedience to decree is required, even though the issuing court has based its decision on an incorrect view of the law, unless there was no opportunity for effective review of the decree." 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2960, 391 (Civ. 2d 1995).

17

of this section, courts have diverged on whether the statutory term 'refused' requires an element of willfulness or intent."[34]  Some find that the use of the word "refused" denotes that an action under the section should be treated as a civil contemp.[35]  The elements to find civil contempt are: Knowledge of the order; violation of the order; and that the order violated was specific and definite.[36]  Impossibility or inability to comply is a defense only if after using due diligence, the person, through no fault of his own, is still unable to comply with the order.[37]  This standard effectively negates an intent requirement.  Other courts, which are in the majority,[38] find that mere failure to comply does not equate to refusal where there is no showing of "willful or intentional disobedience, as opposed to inability, inadvertence, or mistake."[39]

The issue has not been authoritatively decided in this district.  In an opinion not designated for publication, the Tenth Circuit Court of Appeals adopted that second view, holding that a court may deny a debtor a discharge of a debt if he or she willfully or intentionally refuses to testify after improperly asserting the Fifth Amendment.[40]  Bankruptcy Judge Thurman in *In re Green*[41] relied upon the dictionary definition of refusal as implying a "positive denial of an

---

[34] *Jordan v. Smith*, 356 B.R. 656, 659 (D.E.D. Va. 2006); *see In re Wright*, 371 B.R. at 479-480.

[35] *E.g., Hunter v. Magack (In re Magack)*, 247 B.R. 406, 409-410 (Bankr. N. D. Ohio 1999).

[36] *Id.*, 247 B.R. at 410.

[37] *Id.*

[38] *Jordan v. Smith*, 356 B.R. at 659.

[39] *Wilmington Trust Co. v. Jarrell (In re Jarrell)*, 129 B.R. 29, 33 (Bankr. D. Del. 1991).

[40] *Martinez v. Los Alamos Nat'l Bank (In re Martinez)*, 126 Fed. Appx. 890, 2005 WL 648218 (10th Cir. 2005).

[41] *Gillman v. Green (In re Green)*, 335 B.R. 181 (Bankr. D. Utah 2005).

18

application or commend, or at least a mental determination not to comply"[42] and held that "a plaintiff attempting to prohibit or revoke a debtor's discharge under § 727(a)(6)(A) must show the court by a preponderance of the evidence that the debtor willfully or intentionally failed to comply with the court's lawful order."[43]

This Court agrees with the majority position that "refusal" implies an element of willfulness and intentional failure to comply. Denial or revocation of discharge is an extreme penalty contrary to the general Code provision that the discharge provisions be liberally construed in favor of the debtor's fresh start. Of course, this benefit to the debtor must be balanced against the important policy of preserving the integrity of court orders. The Court finds that adopting a construction of "refused" that considers the debtor's intent and requires an element of willfulness and intentional noncompliance before denying or revoking a discharge for failure to comply with a court order strikes the proper balance.

The Court is not convinced that Debtor willfully and intentionally failed to comply with the Turnover Order. Debtor's failure to comply with the Trustee's directives cannot be a basis for revocation under § 727(d)(3), which requires refusal to obey a lawful order of the court. The Turnover Order was not issued until June 9, after Debtor had received and spent the refunds for living expenses. Debtor was confused by the order, since she believed that the refund based upon the earned income credit and child credit were for her grandchildren. Debtor's failure to comply with the order was based upon inability to pay money she did not have and mistaken understanding.

---

[42] *Id.*, 335 B.R. at 184.

[43] *Id.*

19

This is a close case. Although not condoning Debtor's actions, the Court finds that Debtor did not "refuse" to obey a lawful order of the court within the meaning of § 727(d)(3). Revocation of discharge is not appropriate given the principal that the exceptions to the general policy favoring discharge be narrowly construed.

**E. Trustee's Request for Judgment for $5,990.82 and Related Charges.**

In the Complaint, the Trustee prays for entry of judgment for the amount of the 2005 refunds attributable to the portion of the year period prior to Debtor's filing for relief. The turnover order identified this amount as $5,990.82, and Debtor has provided no basis on which to revise this figure. The Complaint also requests that the judgment include prejudgment interest at 10% from the date Debtor received the refunds, attorney fees of $500, and sanction of $200.

While the Trustee has provided the Court with no authority supporting entry of judgment in his Complaint or otherwise, the prayer contained in the Complaint sought a judgment and the pretrial order[44] contemplated a money judgment. Section 542(a) provides a basis for a judgment. In as much as the Court has ruled that the Turnover Order previously entered against Debtor is suspect at best, it does not constitute a res judicata defense to the entry of a judgment as an alternative remedy under § 542 under the circumstances of this case. Therefore, the Court holds the Trustee is entitled to a judgment in the amount of $5,990.82, plus interest at the statutory rate from the date judgment is entered. The judgment is, of course, not discharged by the discharge order entered of January 31, 2006. Further, the Court, pursuant to the rationale of *In re Schrivner*,[45] finds that the all of the Debtor's present and future property, including exempt

---

[44] Doc. 13, ¶ 7.1a  (A).

[45] *Scrivner v. Mashburn (In re Scrivner)*, 370 B.R. 346 (10th Cir BAP 2007).

20

property and future federal and state tax refunds, is subject to a lien in favor of the Trustee in the amount of $5,990.82, plus interest at the statutory rate from the date judgment is entered.

**CONCLUSION.**

For the forgoing reasons the Court denies the Chapter 7 Trustee's Complaint for Turnover and Revocation of Discharge pursuant to §§ 727(d)(2) and (d)(3). The Trustee has failed to satisfy his burden of proof. However, the Court does enter judgment against Debtor in favor of the Trustee in the amount of $5,990.82, plus interest at the statutory rate from the date judgment is entered. The judgment is not discharged by the discharge order entered on January 31, 2006 and is secured by a lien on Debtor's property, including her exempt assets and future tax refunds.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**###**

21